IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03022-PAB

CHARLOTTE A. DAWSON,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

      Defendant.

## ORDER

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Charlotte A. Dawson on October 7, 2020. Plaintiff seeks review of the final decision of defendant (the "Commissioner")[1] denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, as well as for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383(c). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I. BACKGROUND

On February 13, 2018, plaintiff applied for social security benefits under Title II of the Act and for supplemental security income under Title XVI of the Act. R. at 10.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, she is substituted as defendant in this case for Andrew M. Saul, former Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

Plaintiff alleged a disability onset date of January 9, 2018.  *Id.*  Plaintiff's claims were initially denied on December 5, 2018.  *Id.*  Plaintiff requested a hearing before an administrative law judge ("ALJ").  *Id.*

On February 20, 2020, the ALJ issued a decision denying plaintiff's claim.  R. at 7, 22.  The ALJ found that plaintiff has not engaged in substantial gainful activity since the onset date and had the following severe impairments: carpal tunnel syndrome, degenerative disc disease, depressive disorder, anxiety disorder, and post-traumatic stress disorder ("PTSD"), which significantly limit plaintiff's ability to perform basic work activity.  R. at 13.  The ALJ also found that plaintiff has non-severe impairments of asthma and knee pain.  *Id.*  The ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925, and 416.926.  *Id.*  Ultimately, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work with the following qualifications:

> the claimant can occasionally bend, squat and kneel.  She can frequently, but not constantly, handle, ginger, grip and grasp.  The claimant requires work with a SVP 2 or less, with rote and repetitive tasks.  She can occasionally deal with the general public and co-workers.

R. at 15.  The ALJ determined that plaintiff is capable of performing past relevant work as a fast food worker.  R. at 20.

On August 4, 2020, the Appeals Council denied plaintiff's request for a review of the ALJ's decision.  R. at 1.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted). "The threshold for such evidentiary sufficiency is not high." *Id.* However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period

3

of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(1)–(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and

work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff raises five objections to the ALJ's decision: (1) the ALJ found the opinion of David Benson persuasive, but did not follow all of Dr. Benson's mental limitations; (2) the ALJ found the opinion of Rita Flanagan, Ph.D. persuasive, but did not follow all of Dr. Flanagan's mental limitations; (3) the ALJ did not properly address plaintiff's knee impairments; (4) the ALJ did not have valid reasons for rejecting the limitations of Kenneth Danylchuk, M.D.; and (5) the ALJ did not have valid reasons for rejecting the mental limitations of Jodi Trujillo, PMHNP. Docket No. 17 at 3.[3] The Court considers these arguments in turn.

### A. Dr. Benson's Opinions

Plaintiff objects that the ALJ did not follow all of Dr. Benson's mental limitations even though the ALJ found Dr. Benson's opinion persuasive. Docket No. 17 at 13–15. Dr. Benson, a consultative psychologist, examined plaintiff and concluded that plaintiff has mild limitations in the ability to carry out simple instructions, understand and remember complex instructions, and carry out complex instructions. R. at 291–93. He concluded that she has moderate limitations in the ability to interact with others and

---

[3] The Court cites to the page numbers generated by its case management/ electronic case filing system.

respond appropriately to usual work situations. *Id.* The ALJ found Dr. Benson's opinion to be persuasive and consistent with Dr. Benson's examination findings. R. at 19. Plaintiff, however, argues that the ALJ did not explain why he did not factor Dr. Benson's mental limitations into the RFC, which, according to plaintiff, does not limit plaintiff's interaction with supervisors or account for Dr. Benson's limitation in plaintiff's ability to interact with others. Docket No. 17 at 14. This was error, plaintiff contends, because the RFC conflicts with an opinion from a medical source, namely, Dr. Benson's, and when an RFC conflicts with a medical opinion, an ALJ must explain why the ALJ did not adopt the opinion, plaintiff says the ALJ did not do. *Id.* at 15 (citing Social Security Ruling ("SSR") 96-8p; *Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996) ("Although the ALJ stated that he found entirely credible Dr. Combs'[s] opinion that plaintiff would have difficulty loading cargo, pulling down doors and latching them, the ALJ did not include any of these limitations in his determination of plaintiff's RFC. Thus, the RFC finding the ALJ made at the first phase of the step four analysis did not accurately reflect plaintiff's exertional limitations.")).

As an initial matter, the Court notes that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004); 20 C.F.R. § 404.1546(c) (ALJ assesses RFC); *see also Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (unpublished) (holding that ALJ did not substitute his own opinion for physician's in discounting doctor's opinions because "[t]he ALJ simply determined that [the physician's] sitting, standing, and walking limitations were not supported by objective evidence, which is a legitimate basis for the ALJ to afford the opinion less weight").

6

Regardless, plaintiff is mistaken that the RFC does not take into account plaintiff's mental limitations reflected in Dr. Benson's report. Dr. Benson concluded that plaintiff has mild limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions, *see* R. at 292, and moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in routine. R. at 292–93. The RFC incorporates these mild and moderate restrictions by limiting plaintiff to work with a rating of SVP 2 or less, doing rote and repetitive tasks and only occasionally dealing with the general public and co-workers. *See* R. at 15. The Court, therefore, does not agree that the RFC failed to take into account the limitations in Dr. Benson's report, which the ALJ found persuasive. *Cf. Winfrey*, 92 F.3d at 1024. Moreover, the vocational expert, who was asked about a hypothetical claimant who could only occasionally deal with co-workers, testified that the claimant would be able to perform occupations such as Bottling Line Attendant, Bone Picker, or Office Helper. R. at 21; R. at 49–51. Defendant notes that Bottle Line Attendants are in a class of occupations with "the lowest possible level of human interaction that exists in the labor force." Docket No. 18 at 14 (quoting *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (unpublished)).⁴ The Tenth Circuit also noted that this job requires only "superficial

---

⁴ In reply, plaintiff construes defendant as arguing that this was at most a harmless error, and plaintiff argues that it was not harmless. Docket No. 21 at 2. The Court disagrees, as plaintiff has not shown that she is unable be a Bottling Line Attendant, Bone Picker, or Office Helper even if she had the moderate limitations that Dr. Benson found. Moreover, plaintiff claims that an error is only harmless if "no reasonable administrative factfinder, following the correct analysis, could have resolved

contact with supervisors and co-workers," *see Lane*, 643 F. App'x at 770 n.1, and the Court thus finds that the RFC appropriately reflects Dr. Benson's mental limitations. The Court, therefore, will not upset the ALJ's determination with respect to Dr. Benson's opinions.

### B.  Dr. Flanagan's Opinions

Plaintiff objects that the ALJ found the opinion of Dr. Flanagan, a state agency psychologist, persuasive, but then failed to adequately take Dr. Flanagan's opinion into consideration in rendering the RFC.  Docket No. 17 at 15–17.  Dr. Flanagan[5] determined that plaintiff is able to engage in simple and complex tasks at work, that she is moderately limited in her ability to interact appropriately with the public, co-workers, and supervisors, but that she is able to do so when interactions are infrequent, routine, and superficial.  R. at 80.  Dr. Flanagan also determined that plaintiff can adapt to change and tolerate stress in a routine work environment.  R. at 81.  Plaintiff argues that the ALJ "did not identify a single weakness in [the ALJ's] opinion" or "state any reason for failing to follow any part of [Dr. Flanagan's] opinion" and that the RFC does "not limit interaction with supervisors at all" or "limit interaction with any category of people superficially," but only occasionally.  Docket No. 17 at 16.

---

the factual matter in any other way."  *Id.* (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)).  Plaintiff's reliance on *Allen*, however, is misplaced, as that case only considered harmless error in the context of the court needing to "supply a missing dispositive finding," *see* 357 F.3d at 1145, which is not the issue before this Court, and there is no indication that the definition of harmless error in *Allen* applies more broadly.

[5] The ALJ apparently erroneously referred to Dr. Flanagan as Catherine Corsello, M.D.; however, the portion of the record that the ALJ cites in his discussion of Dr. Corsello's opinion is a record signed by Dr. Flanagan.  *See* R. at 19 (citing R. at 81). Defendant does not address this error in her response.

8

Plaintiff's argument regarding the ALJ's treatment of Dr. Flanagan's opinion is unpersuasive for the same reasons that her argument regarding Dr. Benson's opinion was unconvincing.  First, Dr. Flanagan's limitation to infrequent, routine, and superficial interaction is reflected in the ALJ's limitation to a job rated SVP 2 or less, with rote and repetitive tasks, that requires only occasional dealing with the general public and co-workers.  *See* R. at 15.  Although plaintiff argues that this limitation only takes into account Dr. Flanagan's opinion on frequency and not the depth of the interaction, *see* Docket No. 17 at 18, jobs in the SVP 2 category require only "superficial contact with supervisors and co-workers."  *See Lane*, 643 F. App'x at 770 n.1.  Dr. Flanagan's limitation to superficial interaction is, therefore, reflected in the SVP 2 restriction and plaintiff's only occasional dealing with the general public and co-workers.  *See* R. at 15.

### C.  Plaintiff's Knee Impairments

Plaintiff objects that the ALJ did not properly address her knee impairments.  Docket No. 17 at 17–23.  In particular, plaintiff argues that her medical records reflect a "right knee injury and . . . left knee arthritis"; having "bad knees"; pain in her knees; trouble squatting, standing, walking, and kneeling; and an inability to walk more than a half block before needing a rest.  *Id.* at 17.  Plaintiff highlights a report by Howard Platter, M.D., who noted plaintiff's chronic knee pain and limited plaintiff to lifting 20 pounds and to standing and walking only four hours per day with breaks.  *Id.* at 17–18 (citing R. at 77–79).  Plaintiff notes that she obtained treatment from Sergio A. Murillo Herrera, M.D., who diagnosed her with bilateral knee pain and osteoarthritis of the knee after x-rays showed tricompartmental degenerative changes.  *Id.* at 18 (citing R. at 294–95, 360–63).  Plaintiff also testified to knee pain.  R. at 41–43.  Given this history

and these records, plaintiff objects that it was error for the ALJ not to discuss her allegations of knee pain or difficulty with standing or walking, not to assess her allegations of knee pain against medical evidence, and to focus only on her normal exam findings. Docket No. 17 at 19–23.

The Court does not agree that the ALJ ignored plaintiff's knee pain. Rather, the ALJ considered plaintiff's knee pain and noted multiple exam findings showing "pain free active range of motion" including in plaintiff's "lower extremities," yet the ALJ also noted plaintiff's knee pain and grinding. R. at 17 (citing R. at 322–23, 327, 335–36, 343, 360 (bilateral knee pain and grinding, but intact muscle strength and tone), 380, 388, 466, 479 (normal and pain-free range of motion despite signs of nerve irritation)).

The ALJ found that the evidence did not support plaintiff's impairments as being as severe as she alleged. Although plaintiff has highlighted instances of abnormal findings and subjective complaints of knee pain with associated limitations, including an August 2018 record that she could only walk a half-block before needing to rest, *see* Docket No. 17 at 17–18 (citing R. at 199), plaintiff told Dr. Benson in November 2018 that she could walk three blocks and walk up stairs, *see* R. at 290, and, as discussed previously, the ALJ noted that plaintiff had multiple examinations that reflected no or minimal abnormality. R. at 17 (citing R. at 246, 249, 322-23, 327, 336, 343, 360, 380, 392, 466). Moreover, the ALJ noted that plaintiff does not take pain medication or require an assistive device, *see* R. at 17, which is inconsistent with plaintiff's allegations of debilitating knee pain. *See, e.g.*, *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987). The Court does not discount plaintiff's allegations of pain or the abnormal results in plaintiff's medical records; however, the Court does not re-weigh the evidence

when reviewing an ALJ's decision, *see Flaherty*, 515 F.3d at 1070, and the existence of some abnormal results does not mean that the ALJ's decision was "overwhelmed by other evidence in the record." *See Musgrave*, 996 F.2d at 1374. Moreover, the court may not reverse an ALJ's decision simply because the court may have reached a different result based on the record. *See Biestek*, 139 S. Ct. at 1154. Plaintiff has not shown that the ALJ's decision is not supported by sufficient "relevant evidence as a reasonable mind might accept as adequate" to support the RFC. *See id.*

### D.  Dr. Danylchuk's Opinion

Plaintiff objects that the ALJ did not have valid reasons for rejecting Dr. Danylchuk's limitations. Docket No. 17 at 23–28. Dr. Danylchuk completed a three-page form and found that plaintiff has "bilateral hand pain" and "chronic low back pain," no restrictions in the amount she can carry, and no restriction in the time she can sit. R. at 474. Dr. Danylchuk concluded that plaintiff should be limited in standing, walking, and on-feet time to as much as she can tolerate, but answered "not known – per patient tolerance" to how many total hours in an eight-hour workday plaintiff can be on her feet. R. at 475. Dr. Danylchuk found that plaintiff needs to be permitted to shift positions at-will, i.e., from sitting to standing or walking, and has occasional restrictions for stooping, squatting, crawling, kneeling, and reaching, handling, and fingering with both hands. R. at 475–76. The ALJ did not find Dr. Danylchuk's opinion to be persuasive because it was, according to the ALJ, inconsistent with plaintiff's normal exam findings, activities of daily living, and treatment history. R. at 19. The ALJ also found that Dr. Danylchuk's opinion is not explained in any significant detail. *Id.*

Plaintiff objects to each of the ALJ's conclusions about Dr. Danylchuk's opinions,

11

namely, that Dr. Danylchuk's opinion is not consistent with plaintiff's normal exam findings, activities of daily living, or treatment history, and that it was not explained in sufficient detail.  Docket No. 17 at 26–28.  None of these arguments is persuasive.  As the Court has noted, it does not re-weigh the evidence that was before the ALJ, *see Biestek*, 139 S. Ct. at 1154, and, even if the ALJ found Dr. Danylchuk's opinion to be persuasive, the opinion does not mean that the ALJ's decision is "overwhelmed by other evidence in the record."  *See Musgrave*, 996 F.2d at 1374.  As defendant notes, "the ALJ is in the best position to resolve such conflicts in the evidence."  Docket No. 18 at 11 (quoting *Thomas v. Berryhill*, 685 F. App'x 659, 661 (10th Cir. 2017) (unpublished)).

First, as to plaintiff's objection that the ALJ did not "identify the exam findings [that the ALJ] believed were so normal as to contradict Dr. Danylchuk's opinions," Docket No. 17 at 26, although plaintiff is correct that the ALJ did not recite the normal exam findings in the particular paragraph in which he evaluated Dr. Danylchuk's opinion, the ALJ identified plaintiff's normal exam findings elsewhere, as the Court has discussed previously.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("an ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment").  Second, regarding plaintiff's objection to the ALJ's conclusion that Dr. Danylchuk's opinion is not consistent with plaintiff's activities of daily living, the Court does not re-weigh the evidence and the existence of abnormal exam findings or limitations from Dr. Danylchuck does not overwhelm the other evidence in the record.  *See Musgrave*, 996 F.2d at 1374.  Third,

although the ALJ did not explain how plaintiff's treatment history contradicted Dr. Danylchuk's opinion when he reviewed the opinion, he described plaintiff's history elsewhere in the decision. Fourth, plaintiff appears to agree that Dr. Danylchuk's opinion is not explained in any significant detail. *See* Docket No. 17 at 27–28. However, plaintiff argues that the ALJ did not identify an opposing opinion that contained a better explanation. *Id.* For this objection, plaintiff relies on *Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985). *Id.* Plaintiff's reliance is misplaced. The court in *Teter* stated that it could not agree with an "ALJ's summary rejection of [physicians'] reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed," 775 F.2d at 1106, but here, Dr. Danylchuk's three-page check-box opinion is not as detailed as other physicians' reports, and the Tenth Circuit has explained that check-box forms, unaccompanied by written reports or testimony, do not constitute substantial evidence. *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012) (finding that an ALJ was "justified in rejecting [a] summary RFC opinion (related in check-box/fill-in-the-blank format with no explanation or supporting report"); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("In comparison with the objective tests and measurements described by [treating medical sources] in support of their diagnosis . . . , [the consulting physician's] report in this regard consists solely of boxes checked on the Secretary's form to indicate his conclusion. . . . Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."). Although categorical rejection of check-box forms is not appropriate where "there were other materials [in the record] that could lend support to the conclusions in

13

the forms," *see Anderson v. Astrue*, 319 F. App'x 712, 724 (10th Cir. 2009) (unpublished), the ALJ did not categorically reject Dr. Danylchuk's opinion because it was a check-box form.  Ultimately, plaintiff has failed to show that Dr. Danylchuk's opinion, even if it were more developed, is sufficient to overcome the other contradictory evidence of normal exam findings.  *See Musgrave*, 996 F.2d at 1374.

### E.  Jodi Trujillo's Opinion

Plaintiff objects that the ALJ did not have valid reasons for rejecting Ms. Trujillo's mental limitations.  Docket No. 17 at 28–30.  Ms. Trujillo, who examined plaintiff nine times between 2019 and 2020, completed a three-page check-box form and found that plaintiff has serious limitations in understanding and memory, sustaining concentration and persistence, social interaction, and adaptation.  R. at 438–39.  Ms. Trujillo also found that plaintiff's limitations would result in her being off task for at least 30% of the workweek and would have two or three absences per month.  R. at 439–40.  The ALJ found that Ms. Trujillo's opinions are unpersuasive because they are inconsistent with plaintiff's many normal exam findings and treatment history, as well as plaintiff's activities of daily living.  R. at 20.  Plaintiff objects that, notwithstanding her normal exam findings, the ALJ did not provide a sufficiently specific explanation for why he did not find Ms. Trujillo's opinions persuasive and did not "articulate valid evidentiary based reasons for finding [her] opinions unpersuasive."  Docket No. 17 at 28–29.  Plaintiff relies on *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003), and *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

However, each of these three case is distinguishable.  In *Clifton*, the ALJ "did not

14

discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings." 79 F.3d at 1009. Here, the ALJ discussed plaintiff's normal exam findings, activities of daily living, and treatment history, which he found contradicted Ms. Trujillo's conclusions. *See* R. at 15–20. Although, as with his review of some of the other providers' records, the ALJ did not refer to specific evidence in the precise paragraph where he reviewed Ms. Trujillo's opinions, that information is contained elsewhere in the decision, and plaintiff provides no reason that an ALJ should have to cite with specificity supporting or opposing evidence in his discussion of each provider's opinion when such information is recounted elsewhere in the ALJ's decision. In *Doyal*, the court explained that the ALJ must give "specific, legitimate reasons for rejecting" an opinion. 331 F.3d at 764. *Doyal*, in turn, relies on *Drapeau v. Massanari*, 255 F.3d 1221, 1213 (10th Cir. 2001), but, in *Drapeau*, the court noted that the "only reason given by the ALJ for [a] finding was that he concurred with . . . , a consultative physician, who testified that plaintiff did not meet the criteria of any listing." *Id.* The court explained that the "ALJ did not provide any analysis of why plaintiff did not meet [a] Listing, did not mention or discuss [a physician's] report, did not provide any explanation for why he disregarded the opinion of a treating physician, and did not provide any reason for giving greater weight to the opinion of a consulting physician than to a treating physician." *Id.* The ALJ in this case, however, gave specific, legitimate reasons, namely, he found Ms. Trujillo's opinion to be inconsistent with normal exam findings, activities of daily living, and treatment history, R. at 20, which, again, he recounted in previous pages of the decision. Finally, in *Watkins*, the ALJ "offered no explanation for the weight, if any, he

15

gave to the opinion of Dr. Rowland, the treating physician." 350 F.3d at 1300. As discussed, the ALJ's review in this case was far more substantial.

Plaintiff objects that the ALJ did not explain why he believed that the normal mental status exam findings, treatment history, or activities of daily living contradicted Ms. Trujillo's opinions. Docket No. 17 at 29–30. But the ALJ explained that he found Ms. Trujillo's opinions to be inconsistent with plaintiff's records and accordingly found the opinions to be unpersuasive. Moreover, even if Ms. Trujillo's opinions were persuasive, plaintiff has failed to show how a job rated SVP 2 or less, with rote and repetitive tasks and only occasional interaction with the public and co-workers, as described in the RFC, *see* R. at 15, is in conflict with those opinions. The Court does not re-weigh the evidence, *see Biestek*, 139 S. Ct. at 1154, and plaintiff has not shown how Ms. Trujillo's opinion could overwhelm the other evidence in the record. *See Musgrave*, 996 F.2d at 1374.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **AFFIRMED**. It is further

**ORDERED** that this case is closed.

DATED May 5, 2022.

                                            BY THE COURT:

                                            PHILIP A. BRIMMER
                                            Chief United States District Judge